UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States, | No. 2:20-cr-00001-KJM-1 |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Julius Rucks, | |
| Defendant. | |

This matter is before the court on defendant Julius Rucks' motion to suppress evidence. Mot. at 2, ECF No. 56. Plaintiff United States opposes. Opp'n at 1, ECF No. 57. Mr. Rucks filed a reply. Reply, ECF No. 58. The court heard argument on May 23, 2022. ECF No. 60. Mr. Rucks appeared, along with attorney David Fischer who was covering with Mr. Rucks' permission for his counsel Tamara Soloman given her illness. *Id.* Cameron Desmond appeared for the government. *Id.* After considering the parties' briefing, as discussed with counsel at hearing, and for the reasons below, **the court's tentative ruling is to hold an evidentiary hearing on the narrow issue of whether Mr. Rucks was arrested inside of or outside of his residence**.

**I.     BACKGROUND**

Defendant Julius Rucks is charged with being an ex-felon in possession of multiple firearms in violation of 18 U.S.C. § 922 (g)(1)), three counts of distribution of fentanyl in

1  violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute fentanyl.
2  Compl., ECF No. 1; Mot. at 2.  The charges stem in part from the evidence found in a search of
3  Mr. Rucks' apartment on July 23, 2019.  Mot. at 2.  Mr. Rucks moves to suppress all evidence
4  seized or obtained by the Butte County Sheriff's Office during the search, including a safe
5  containing a .357 magnum revolver, a 9 mm semiautomatic firearm with magazine and 13 rounds,
6  a .45 caliber semiautomatic firearm with magazine and 5 rounds, as well as scales, pills, a
7  powdery substance, keys, cell phones, ammunition, a pill press, and any statements he made. *Id.*
8  at 2–3.

9  Mr. Rucks contends the arresting officers served the state warrant based on allegations of his selling counterfeit currency without incident and that he did not consent to have his residence searched. *Id.* at 3.  Nevertheless, after he stepped out of his apartment, surrendered himself, and locked the door, the officers took his apartment keys out of his pocket, unlocked the door, and conducted a protective sweep. *Id.*

The officers' versions of the encounter diverge on key points. *See generally* Opp'n.  In particular, the officers allege Mr. Rucks initially responded to their order to open the door, which was still secured with a chain lock. *Id.* at 2. Mr. Rucks then closed the door and opened it again about 10 seconds later, at which point officers pushed their way through the door into the apartment. *Id.*  One officer then arrested Mr. Rucks and two officers conducted a protective sweep of the apartment. *Id.* at 3.  Upon finding ammunition and a pill press in plain view, the officers obtained a second state search warrant and searched the premises with assistance from the agents with the federal Drug Enforcement Administration. *Id.*  The officers' body cameras did not record the incident or search.  Mot. at 3.

**II.    LEGAL STANDARD**

"The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....'" *United States v. Calandra*, 414 U.S. 338, 347 (1974) (quoting U.S. Const. amend. IV).  The Fourth Amendment applies to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 650 (1961).  Under the exclusionary rule, a criminal defendant may

move to suppress evidence that was obtained in violation of his or her Fourth Amendment rights. *Calandra*, 414 U.S. at 341, 347; *see* Fed. R. Crim. P. 41(h); *Weeks v. United States*, 232 U.S. 383 (1914). This prohibition applies both "to direct products of an illegal search—i.e., the physical evidence found during the search itself—and to indirect products of the illegal search—i.e., statements or physical evidence subsequently obtained in part as a result of the search—if they bear a sufficiently close relationship to the underlying illegality." *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir.2011) (citation and internal quotation marks omitted); *see also Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

The exclusionary rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Calandra*, 414 U.S. at 348; *see Davis v. United States*, 564 U.S. 229, 236–37 (2011). As a result, not every Fourth Amendment violation calls for the remedy of suppression of the evidence. *See Davis*, 564 U.S. at 232, 242–44. When deciding a motion to suppress, courts first determine whether a Fourth Amendment violation occurred, and then consider whether the suppression of evidence is the appropriate sanction. *Id*.

With respect to the first inquiry, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (citations and internal quotation marks omitted). When a defendant moves to suppress evidence, the government bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure falls within one of the delineated exceptions to the warrant requirement. *See United States v. Huguez–Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992); *see also United States v. Matlock*, 415 U.S. 164, 177 n.14, 94 (1974) (citing *Lego v. Twomey*, 404 U.S. 477 (1972)).

One such exception is a protective sweep of a residence. In *Maryland v. Buie*, 494 U.S. 325, 334 (1990), the Court determined that incident to an arrest, "officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately

launched." In *People v. Celis*, the California Supreme Court addressed the question of whether "*Buie's* lowered level of justification is limited only to those situations in which the officers are already lawfully inside a house conducting an arrest, or whether it will support the entry into a house . . . by officers who lack probable cause to make an arrest but who have lawfully detained a suspect just outside." 33 Cal. 4th 667, 678 (2004). The California Supreme Court held that a protective sweep under these circumstances "can be justified by . . . reasonable suspicion," which itself requires "'articulable facts' [known to officers] considered together with the rational inferences drawn from those facts, that would warrant a reasonably prudent officer to entertain a reasonable suspicion that the area to be swept harbors a person posing a danger to officer safety." *Id.* at 679–80 (quoting *Buie*, 494 U.S. at 334).

Here, Mr. Rucks' motion to suppress hinges on whether he was arrested inside or outside of his home. Given the conflicting accounts of the initial arrest, the court believes an evidentiary hearing on the narrow issue of whether he was arrested inside or outside of the home is warranted.

### III.   CONCLUSION

The court's tentative decision is to **grant** Mr. Rucks' request to the extent it will convene a focused evidentiary hearing on the issue of where, exactly, Mr. Rucks was arrested. If either party objects to this decision, it may argue the objection at the status conference currently set for June 6, 2022. Without objection this tentative decision will become final; if each party notifies the court it does not object and requests the status be vacated, the court will honor that request. Assuming this order is confirmed, the parties are directed to meet and confer and file a joint status report by noon on **June 10, 2022**, identifying the witnesses who will testify at the evidentiary hearing and the length of time for each witness's testimony, as well the exhibits each party will seek to introduce.

IT IS SO ORDERED.

DATED: May 31, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE